**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

LUCIO AND MEERA SANTORO T/A
SANTORO LICENSING,

               Plaintiff,

    v.

THE PARTNERSHIPS and
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A",

               Defendants.

Case No. 25-cv-04212

## COMPLAINT

Lucio and Meera Santoro T/A Santoro Licensing ("Santoro" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations Identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because Defendants structure their business activities to target consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief,

sell products using infringing and counterfeit versions of Plaintiff's federally registered trademarks (collectively, the "Unauthorized Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the state of Illinois.

## II. INTRODUCTION

3.     Plaintiff filed this case to prevent e-commerce store operators who trade upon Plaintiff's reputation and goodwill from further selling and/or offering for sale Unauthorized Products. Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share identifiers, such as design elements and similarities of the Unauthorized Products offered for sale, establishing that a logical relationship exists between them, and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiff's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect consumers from purchasing Unauthorized Products over the Internet. Plaintiff has been, and continues to be, irreparably damaged through consumer confusion and dilution of its valuable trademarks because of Defendants' actions and therefore seeks injunctive and monetary relief.

# III. THE PARTIES

4.      Lucio and Meera Santoro began working on what is now Santoro London in 1983. While the operation was originally just the two of them in a studio, it has grown into a globally recognized design house creating covetable gifts, stationery, and lifestyle products. Santoro London also has a thriving licensing arm, Santoro Licensing, allowing the design house to increase their global reach and benefit from the creativity of artists who want to be under the Santoro umbrella. Lucio and Meera Santoro, Santoro London, and Santoro Licensing will be collectively referred to herein as "Santoro." Santoro has its principal place of business in the United Kingdom.

5.      Santoro's licensing division has its origins in the now iconic Bang on the Door brand. Taking inspiration from a handful of child-like sketches, Santoro Licensing transformed the Bang on the Door artworks into an international sensation. Bang on the Door went on to sweep the industry awards scene, most notably winning the 2000 LIDA Brand of the Year award, having generated in excess of $800 million at retail. With the enormous success of Bang on the Door, a path was paved for Santoro's new star, and the subject of this action, Gorjuss.

6.      The Gorjuss brand is built upon Suzanne Woolcott's artworks featuring stripey socked, whimsical girls, who are in snapshots of their own little worlds. Santoro creates products featuring these artworks and licenses the use of the artworks. Launched in 2010, the Gorjuss collection captivated the hearts and imagination of the public. The detailed artworks hold a wide portfolio of licensees, are sold in over 90 countries, and generated sales of over 48 million products in 2017 alone. The success of the Gorjuss Brand culminated in Santoro being awarded the Queen's Award for Business – International Trade in both 2018 and 2020.

7.      Santoro and its licensees market and sell a variety of Gorjuss-branded products, including handbags, stationary, dolls, mugs, craft sets, accessories, school and office supplies, and

other merchandise bearing Plaintiff's SANTORO and/or GORJUSS trademarks (collectively, "Gorjuss Products"). Gorjuss Products have become enormously popular and even iconic, driven by Plaintiff's quality standards and innovative designs. Among the purchasing public, Gorjuss Products are instantly recognizable as such. Gorjuss Products are distributed and sold to consumers by Plaintiff and its licensees through many approved retailers across the globe, and online at www.santoro-london.com/gorjuss.

8.     Plaintiff has used the SANTORO and GORJUSS trademarks, and other trademarks, for many years and has continuously sold products under its trademarks (collectively, the "Gorjuss Trademarks"). As a result of this long-standing use, strong common law trademark rights have amassed in the Gorjuss Trademarks. Plaintiff's use of the Gorjuss Trademarks has also built substantial goodwill in the Gorjuss Trademarks. The Gorjuss Trademarks are famous marks and valuable assets of Plaintiff. Gorjuss Products also typically include at least one of the Gorjuss Trademarks.

9.     The Gorjuss Trademarks are registered with the United States Patent and Trademark Office and are included below.

| Registration Number | Trademark | Registration Date | Goods and Services |
|---|---|---|---|
| 3,833,706 | GORJUSS | Aug. 17, 2010 | For: Greeting cards, postcards, mini greeting cards, notelets, gift wrapping paper; art prints, art prints on canvas, book marks, paper badges, posters, rubber stamps, stamp pads, printing blocks, arts and craft paint kits; diaries; calendars, notebooks; notepads; fabric covered notebooks; address books; assignment note books, agendas, lever arch file folders; ring binders, paper folders, paper door hangers; |

| | | | memo pads; sketchbooks; stationery sets comprised of paper notebooks, paper, envelopes, pens, pencils, drawing rulers, erasers, sold together as a unit; pencil tins, fabric pencil cases; erasers; pens; pencils; fountain pens; ballpoint pens; gel roller pens; pencil sharpeners; artists materials, namely, paintbrushes; crayon pastels; colouring pens; photo albums; paper gift bags; cardboard storage boxes; cardboard gift boxes; art and photograph portfolio case; stationery and document portfolio; zip around binders, wall stickers, stickers, albums for stickers, address labels; Printed materials, namely, novels and series of fiction books and short stories featuring characters; lunch bags in class 016. |
|---|---|---|---|
| 4,001,910 | GORJUSS | Jul. 26, 2011 | For: all purpose sports bags; athletic bags; beach bags; gym bags; drawstring pouches; handbags; clutch bags; leather shopping bags; overnight bags; school bags; shoulder bags; book bags; evening handbags; cosmetic and personal grooming bags sold empty; tote bags; duffle bags; travelling bags for carrying personal items and clothing; garment bags for travel; briefcases; suitcases; holdalls; backpacks; purses; pocket wallets; coin purses; wallets; organizer purses; vinyl cases for carrying identification cards; umbrellas; parasols in class 018. |
| 4,059,879 | GORJUSS | Nov. 22, 2011 | For: Confectionery, namely, boiled sweets, bon-bons made of sugar, |

| | | | |
|---|---|---|---|
| | | | mints, chocolates, chocolate truffles, fruit jellies, gum sweets, marshmallows, decorated chocolates, decorated jellies, chocolate lollies, lollipops, bubblegum, bars of chocolate, sugar cake decorations, ice-cream, frozen confections, wafers, snack cakes, bakery goods, namely brownies, cakes in class 030. |
| 5,100,061 | GORJUSS | Dec. 13, 2016 | For: Toys, games and playthings, namely, dolls, doll clothing, doll accessories, board games, puzzles, plush toys, toy figures and card games; dolls; clothing for dolls; accessories for dolls; dolls houses; plush toys; bean bag dolls; toy figures; toy figurines and accessories thereof; rocking horses; playing cards; card games; board games; toy building blocks; puzzles; jigsaw puzzles; dominoes; marbles for games; musical toys; action skill games; puppets; balloons; hand held units for playing electronic games; electronic learning toys; toy bakeware and cookware; toy houses; toy model hobbycraft kits; inflatable toys; pull along toys; ride-on toys; bath toys; wind-up toys; musical instrument toys; balls for sport; handheld sports games, namely, yo-yos, skipping ropes, kites, tether-ball games, paddle ball games; bags adapted for sports equipment, namely, bowling ball bags; in-line skates; toy scooters; skate boards; children's play cosmetics in class 028. |

| | | | |
|---|---|---|---|
| 5,160,334 | GORJUSS | Mar. 14, 2017 | For: Clothing, namely, t-shirts, shirts, knit tops, woven tops, sweaters, jeans, trousers, shorts, dresses, skirts, coats, jackets, swimwear, beachwear, underwear, hosiery, camisoles, sleepwear, pyjamas, bath robes, belts, gloves, scarves, sarongs; headwear, namely, hats, caps, headbands, headscarves; footwear; shoes; athletic shoes; sandals; slippers; fabric eye shades in class 025. |
| 5,299,757 | GORJUSS | Oct. 03, 2017 | For: Furniture; mirrors; personal compact mirrors; picture frames; photograph frames; coat hangers; indoor and outdoor furniture; stools; chairs; tables; sofas; pillows; cushions; Neck supporting pillows; Non-metal hooks; stands for flower pots; chests for toys; non-metal and non-paper containers for storage; magazine racks; decorative mobiles; storage solutions, namely, furniture chests, boxes of wood or plastic, plastic cases, storage racks, drawers being furniture parts, cupboards; bins, not of metal; childrens furniture in class 020. |
| 5,299,762 | GORJUSS | Oct. 03, 2017 | For: Beverageware and dinnerware of glass, porcelain, china and earthenware; kitchen and household containers and utensils, namely, serving forks and serving spoons, not of precious metal or coated therewith; candle rings and candle sticks not of precious metal; china ornaments; figurines of porcelain, earthenware, terracotta, ceramic, crystal or glass; glass jars; jugs and pitchers; napkin holders and rings |

| | | | |
|---|---|---|---|
| | | | not of precious metal; paper plates; tableware, not of precious metal, namely, coffee sets comprised primarily of coffee cups, tea sets, plates, saucers, cups, bowls, drinking glasses, mugs; tea pots; vases; dishes; works of art of porcelain, terracotta or glass; pottery, namely, sculptures of earthenware; cups and mugs not of precious metal; soap dishes; oven mitts; baskets for household purposes; all purpose portable household containers; pill boxes for personal use; perfume atomisers sold empty; tooth brushes; ironing board covers; wall plaques made of earthenware and not being furniture; cookie and biscuit cutters in class 021. |
| 5,299,767 | GORJUSS | Oct. 03, 2017 | For: Textiles and textile goods not included in other classes, namely, towels, face towels, pillow cases, duvet covers, bedspreads, bed sheets, comforters, curtains, fabric valances, quilts, bed blankets, throws, travelling rugs, cushion covers, tea towels, table linen and table napkins of textile, shower curtains, upholstery fabric, placemats of textile material, textile wall hangings, fabrics for textile use, traced cloths for embroidery, canvas for tapestry and embroidery in class 024. |
| 5,305,318 | GORJUSS | Oct. 10, 2017 | For: Anti-perspirants; Aromatics for fragrances, namely, body sprays; bath salts not for medical purposes; beauty masks; Body moisturisers; body scrub; colognes; cosmetics; |

| | | | |
|---|---|---|---|
| | | | decorative transfers for cosmetic purposes; dentifrices; eau de toilette; essential oils; false nails; fragrance emitting wicks for room fragrance; Fragrance sachets; Fragrances; Gels for use on the hair; hair care preparations; Hair conditioners; hair dyes; hair lotions; Hair shampoos; hair spray; Hair styling preparations; incense; incense sticks; non-medicated liquid soap; non-medicated lip balm; lotions for cosmetic purposes; Nail care preparations; Nail cream; nail polish; nail varnish; toilet water; Perfumes; Personal deodorants; room fragrances; shampoos; non-medicated skin care preparations; skin cleansers; skin lotion; skin moisturisers; non-medicated soaps; non-medicated sun care preparations; non-medicated toiletry preparations; wipes impregnated with a skin cleanser; Reed diffusers comprised of scented oils and also including reeds and a diffuser container; non-medicated skin cleansing gels; disposable wipes impregnated with fragranced cleansing compounds for personal hygiene in class 003. |
| 5,321,322 | GORJUSS | Oct. 31, 2017 | For: Video game software; interactive multi-media software for playing games; computer game programs, software and cartridges; electronic game programs, software, cartridges; Computer game software for use on mobile devices, computers, games consoles, tablet computers and other electronic |

| | | | mobile devices; Pre-recorded digital media devices, audio discs, video discs, CDs, DVDs and downloadable audio files featuring motion pictures, books, music, movies, television shows, short form programs, activities for children, or other audio-visual entertainment programming in the animation genres; downloadable motion pictures, television shows, audio-visual entertainment programs featuring animation, downloadable video recordings featuring animation, downloadable computer desktop wallpaper graphic files, downloadable computer game software and downloadable music files via a global computer network and wireless communication devices; downloadable computer, video and electronic game programs and software via a global computer network and wireless communication devices; downloadable software in the nature of a mobile application for use in processing digital audio and video files in the fields of entertainment, games and social media; downloadable computer software for mobile phones, tablets and other electronic mobile devices for use in processing digital audio and video files in the fields of entertainment, games and social media; downloadable software in the nature of a mobile application for playing computer games for use with computers, portable handheld digital |
|---|---|---|---|

| | | | |
|---|---|---|---|
| | | | electronic communication devices, mobile devices and wired and wireless communication devices; pre-recorded cds featuring music and motion picture sound tracks; cases for eyeglasses and sunglasses; spectacle frames; sunglasses; safety and protective helmets; blank USB flash drives; mouse pads; audio speakers; headphones and earphones; calculators; cameras; portable media players; battery chargers for mobile phones; decorative magnets; protective cases and covers for telephones, and other electronic mobile devices, namely, laptops, portable media players, mp3 players, cameras; downloadable ring tones for mobile phones; downloadable electronic publications in the nature of e-books, magazines, journals, blog articles, and podcasts in the field of fictional stories for children and adults in class 009. |
| 5,349,047 | GORJUSS | Dec. 05, 2017 | For: Jewellery; necklaces; bracelets; earrings; jewellery pins; finger rings; Jewellery chain of precious metal for anklets; jewellery charms; jewellery cases; jewellery boxes; pendants; clocks; watches; watch straps; Semi-precious articles of bijouterie in the nature of jewellery; Clock cases being parts of clocks; boxes of precious metal; jewellery pins for use on hats; ornamental lapel pins; Key rings of precious metals; Ornaments made of precious metal in the nature of jewellery; statues made of precious metal in |

| | | | |
|---|---|---|---|
| | | | class 014. |
| 5,553,626 | POPPI LOVES | Sep. 04, 2018 | For: Household textiles in the nature of textile tablecloths, textile fabrics for home interiors, textile tea towels; household linen; bed linen; table linen; towels; face towels; pillow cases; fabric valances; duvet covers; quilts; bedspreads; bed sheets; comforters; curtains; baby blankets; children's blankets; woollen blankets; fleece blankets; bed blankets; silk blankets; throws; travelling rugs; cushion covers; tea towels; table napkins of textile; shower curtains; textile place mats; textile wall hangings; cashmere fabrics; cotton fabrics; textile fabrics for home and commercial interiors; cotton base mixed fabrics; knitted fabrics; mixed fibre fabrics; traced cloths for embroidery; canvas for tapestry or embroidery; silk fabrics for printing patterns in class 024. |
| 5,604,825 | POPPI LOVES | Nov. 13, 2018 | For: Greeting cards; postcards; notelets; gift wrapping paper; art prints; art prints on canvas; book marks; posters; diaries; calendars; notepads; notebooks; address books; assignment note books; agendas; lever arch file folders; three-ring binders; paper folders; memo pads; sketchbooks; stationery sets comprised of paper notebooks, paper, envelopes, pens, pencils, drawing rulers, erasers, sold together as a unit; erasers; pens; pencils; fountain pens; ballpoint pens; gel roller pens; pencil sharpeners; pastel crayons; photo |

| | | | |
|---|---|---|---|
| | | | albums; paper gift bags; cardboard storage boxes; cardboard gift boxes; art and photograph portfolio cases; stationery and document portfolios; zip around binders; stickers; address labels; napkins of paper and cellulose; paper weights; table cloths, linen and mats of paper; paper tissues; facial tissues; toilet tissues; artists' materials, namely, artists' brushes, canvas for painting, painting palettes, molds for modeling clays; paintbrushes; pencil tins in the nature of pencil cases; pencil cases; printed paper door hangers; rubber stamps; children's books; picture books; stationery cases; paper gift cards; paper stationery; glue for stationery or household purposes; stationery folders; stationery boxes; gift bags; paper bags for packaging; all of the foregoing featuring a fictional character of a girl named Poppi in class 016. |
| 5,609,969 | POPPI LOVES | Nov. 20, 2018 | For: Overnight bags; school bags; shoulder bags; book bags; evening handbags; toiletry bags sold empty; tote bags; duffle bags; travelling bags for carrying personal items and clothing; suitcases; garment bags for travel; briefcases; holdalls; backpacks; purses; wallets; coin purses; vinyl card cases for carrying identification cards; credit card holders; business card holders in the nature of wallets and card cases; umbrellas and parasols; key cases; Imitation leather; handbags; clutch bags; leather shopping bags; |

| | | | |
|---|---|---|---|
| | | | satchels; parasols; covers for parasols; covers for umbrellas; vanity cases, not fitted; textile shopping bags; cosmetic bags sold empty; all of the foregoing featuring a fictional character of a girl named Poppi in class 018. |
| 5,620,502 | POPPI LOVES | Dec. 04, 2018 | For: Glassware for household purposes, namely, beverage glassware; porcelain ware in the nature of plaques of porcelain, statues of porcelain, figurines of porcelain, dinner services of porcelain, namely, plates, bowls, mugs; chinaware in the nature of plaques of china, statues of china, figurines of china, dinner services of china, namely, plates, bowls, mugs; earthenware in the nature of plaques of earthenware, statues of earthenware, figurines of earthenware, dinner services of earthenware, namely, plates, bowls, mugs; containers for household use; kitchen utensils, namely, rolling pins, spatulas, graters, whisks, ladles, nutcrackers, wooden cooking spoons, cutting boards; candle rings; candlesticks; ceramics for household purposes in the nature of ceramic statues, vases, vessels, bowls, plates and pots, ceramic tissue box covers; china ornaments; statuettes of porcelain; figurines of terracotta; figurines of crystal; figurines of glass; ceramic figurines; bowls; glass jars; earthenware jars; mason jars; jugs; pitchers; napkin holders; napkin rings; pepper mills, hand-operated; salt cellars; tea and |

| | | | |
|---|---|---|---|
| | | | coffee services in the nature of tableware; tea pots; vases; dishes; works of art of porcelain, terracotta or glass; pottery in the nature of earthenware mugs, earthenware flower pots; cups; mugs; decanters; soap dishes; plates; wall plaques made of china, crystal, earthenware, glass, porcelain or terra cotta, not being furniture; soap boxes; tooth brushes; perfume atomisers, sold empty; pill boxes for personal use; fitted picnic baskets; money boxes; all of the foregoing featuring a fictional character of a girl named Poppi in class 021. |
| 2,724,216 | SANTORO | Jun. 10, 2003 | For: Greeting cards, postcards, paper gift wrapping paper, address books, appointment books, note books, stationery, namely diaries, lockable diaries, pencil holders, fabric pencil cases, zip around binders, assignment books, agendas, die-cut paper notebooks, erasers, paper folders, pens, pencils, calendars, notebooks, notepads, fabric covered notebooks, address books, lever arch files, ring binders, photo albums, paper gift bags, filed boxes for storage of business and personal record, stickers, sticker books, paper labels, photographs in class 016. |
| 3,039,938 | SANTORO | Jan. 10, 2006 | For: Clothing, namely, T-shirts, sweatshirts, sweatpants, tank tops, aprons, blouses, coats, dresses, jackets, jerseys, jogging suits, gym shorts, jumpers, nightshirts, pajamas, ponchos, robes, shirts, shorts, skirts, sweaters, sweat suits, jeans, pants, vests, tops, turtlenecks, |

| | | | |
|---|---|---|---|
| | | | socks, camisoles, knit shirts, sweat bands, wrist bands, fleece tops and bottoms, golf shirts, raincoats, polo shirts, sleeveless shirts, beachwear, swim wear, bathing suits, bathrobes, leotards, leggings, slacks, underwear and undergarments, namely, boxer shorts, pants, bras, panties, slips, hosiery, pantyhose and tights, accessories, namely, neckwear, belts, gloves, ties, scarves, ear muffs, mittens, baby's clothing, namely, bibs not of paper, cloth bibs, romper suits; headgear, namely hats, caps, baseball caps, knitted headwear, knit hats and caps, headbands, bandanas, sun visors and visors, footwear, namely, boots, shoes, sneakers and athletic shoes, sandals, slippers, flip-flop sandals in class 025. |
| 3,049,484 | SANTORO | Jan. 24, 2006 | For: Perfume, cosmetics, namely, nail varnish and preparations for reinforcing and strengthening nails, lip-balms, lipstick, lip gloss, body glitter, body shimmer, body soufflé, mascara, face-powders, eye-shadows, eye-liners; Toiletries, namely, bubble-baths, body sprays, body spritzers, skin moisturizers, body scrubs, hair lotions, namely, hair gel, hair mousse and hair sprays, skin soap, bath salts, bath beads, shower gels, essential oils for personal use, dentifrice, hair glitter, hair mascara in class 003. |
| 3,053,246 | SANTORO | Jan. 31, 2006 | For: Dolls, plush toys, toy mobiles, bean bag dolls, pet toys, tin toys, namely figurines, construction toys, toy action figurines and accessories |

| | | | |
|---|---|---|---|
| | | | thereof, collectable toy figures, toy clocks and watches; wooden toys, namely figurines, puzzles, building blocks, toy action figures and accessories thereof; PVC toys, namely collectable figurines, wind-up toys, bendable toys, toy bakeware and cookware, toy banks, toy building blocks, toy houses, toy model hobbycraft kits, toy record players, inflatable toys, pull toys, ride-on toys, bath toys; musical instrument toys, jigsaw puzzles, board games, balls for sport, teddy bears, balloons, handheld sports games, namely, yo-yos, skipping ropes, kites, tether-ball games, paddle ball games, card games, bags adapted for sports equipment, namely, bowling ball bags; in-line skates; toy scooters, skate boards, hand-held unit for playing video games in class 028. |
| 3,065,253 | SANTORO | Mar. 07, 2006 | For: All purpose sports bags; Athletic bags; Beach bags; Gym bags; Drawstring pouches; Handbags; Clutch bags; Leather shopping bags; School bags; Shoulder bags; Evening bags, Cosmetic and personal grooming bags sold empty; Tote bags; Duffle bags; Traveling bags for carrying personal items and clothing; Briefcases; Suitcases; Garment bags for travel; Holdalls; Backpacks; Overnight bags; Purses; Pocket wallets; Coin bags; Wallets; Key cases; Umbrellas; Parasols in class 018. |

| | | | |
|---|---|---|---|
| 5,289,509 | SANTORO | Sep. 19, 2017 | For: Confectionery, namely, boiled sweets, bon-bons made of sugar, mints, chocolates, chocolate truffles, fruit jellies, gum sweets, marshmallows, decorated chocolates, decorated jellies, chocolate lollies, lollipops, bubblegum, bars of chocolate, sugar cake decorations, ice-cream, frozen confections, wafers, snack cakes; bakery goods, namely, brownies, biscuits, cakes in class 030. |
| 5,289,502 | SANTORO | Sep. 19, 2017 | For: Beverageware and dinnerware of glass, porcelain, china and earthenware; kitchen and household containers and utensils, namely, serving utensils, not of precious metal or coated therewith; candle rings and candle sticks not of precious metal; china ornaments; figurines of porcelain, earthenware, terracotta, ceramic, crystal or glass; glass bowls and glass jars; jugs and pitchers; napkin holders and rings not of precious metal; paper plates; tableware, not of precious metal, namely, coffee sets, tea sets, plates, saucers, cups, bowls, glasses, mugs; tea pots; vases; dishes; works of art of porcelain, terracotta or glass; pottery, namely, sculptures of earthenware; cups and mugs not of precious metal; soap dishes; oven mittens; baskets for domestic use; all purpose portable household containers; pill boxes for personal use; tooth brushes; ironing board covers; wall plaques, not being furniture, made of china or porcelain; cookie and biscuit cutters |

| | | | |
|---|---|---|---|
| | | | in class 021. |
| 5,305,333 | SANTORO | Oct. 10, 2017 | For: Furniture; mirrors; personal compact mirrors; picture frames; photo frames; coat hangers; indoor and outdoor furniture; furniture; stools; chairs; tables; sofas; pillows; cushions; seat pads; Neck supporting pillows; Non- metal hooks; stands for flower pots; chests for toys; containers of wood or plastic for storage; magazine racks; decorative mobiles; nesting boxes of wood or plastic; storage solutions, namely, furniture chests, boxes of wood or plastic, plastic cases, storage racks, drawers being furniture parts, cupboards; bins, not of metal; children's furniture in class 020. |
| 5,373,099 | SANTORO | Jan. 09, 2018 | For: Jewellery; necklaces; bracelets; earrings; finger rings; Jewellery chain of precious metal for anklets; jewellery charms; jewellery cases; jewellery boxes; pendants; clocks; watches; Clock cases being part of clocks; boxes of precious metal; ornamental jewellery pins; Key rings of precious metals; statues made of precious metal; ornaments of precious metal in the nature of jewellery in class 014. |
| 5,399,520 | SANTORO | Feb. 13, 2018 | For: computer game software for use on mobile devices, computers, game consoles, tablet computers; Pre-recorded media, namely, audio, cds, dvds and digital audio and video files featuring motion pictures, books, music, movies, television shows, short form programs, |

| | | | |
|---|---|---|---|
| | | | activities for children, instructions for toys in the animation genres; downloadable motion pictures, television shows, audio-visual entertainment programs, images, videos, computer desktop wallpaper, games and music in the field of animation via a global computer network and wireless communication devices; downloadable computer, video and electronic game programs and software via a global computer network and wireless communication devices; downloadable software in the nature of a mobile application for processing digital audio and video files in the fields of entertainment, games and social media; downloadable computer software for mobile phones, tablets for processing digital audio and video files in the fields of entertainment, games and social media; downloadable software in the nature of a mobile application for playing video games for use with computers, portable handheld digital electronic communication devices, mobile devices and wired and wireless communication devices; pre-recorded cds featuring music and motion picture sound tracks; Cases for eyeglasses and sunglasses; spectacle frames; sunglasses; blank USB flash drives; mouse pads; headphones and earphones; decorative magnets; protective cases and covers not of paper for |

| | | | |
|---|---|---|---|
| | | | telephones; downloadable electronic publications in the nature of e-books, magazines, electronic journals, podcasts featuring fictional stories for children and adults in class 009. |
| 5,472,688 | SANTORO | May 22, 2018 | For: Textiles and textile goods not included in other classes, namely, towels, face towels, pillow cases, duvet covers, bedspreads, bed sheets, comforters, curtains, fabric valances, quilts, bed blankets, throws, cushion covers, tea towels, table linen and table napkins of textile, fabrics for textile use, traced cloths for embroidery, canvas for tapestry and embroidery in class 024. |
| 5,094,687 | SANTORUS | Dec. 06, 2016 | For: Clothing, namely, t-shirts, shirts, knit tops, woven tops, sweaters, jeans, trousers, shorts, dresses, skirts, coats, jackets, swimwear, beachwear, underwear, hosiery, camisoles, sleepwear, pyjamas, bath robes, belts, gloves, scarves, sarongs; headwear, namely, hats, caps, headbands, headscarves; footwear; shoes; athletic shoes; sandals; slippers; fabric eye shades in class 025. |
| 5,186,607 | SANTORUS | Apr. 18, 2017 | For: Furniture; mirrors; picture frames; bathroom furniture; pillows and cushions; indoor and outdoor furniture; storage solutions, namely, cabinets, shelves, furniture chests, boxes of wood indoor blinds; furniture doors; bins, not of metal in class 020. |
| 5,195,762 | SANTORUS | May 02, 2017 | For: Carpets; rugs; floor coverings; non-textile wall hangings; |

| | | | |
|---|---|---|---|
| | | | wallpaper; door mats in class 027. |
| 5,195,763 | SANTORUS | May 02, 2017 | For: Textiles and textile goods not included in other classes, namely, towels, face towels, pillow cases, duvet covers, bedspreads, bed sheets, comforters, curtains, fabric valances, quilts, bed blankets, throws, travelling rugs, cushion covers, tea towels, table linen and table napkins of textile, shower curtains, placemats of textile material, textile wall hangings, fabrics for textile use in class 024. |
| 5,195,766 | SANTORUS | May 02, 2017 | For: lamp bases; Bedside lamps; Ceiling lights; Chandeliers; Electrical lamps for outdoor lighting; Floor lamps; Lamp holders; Lamp shades; Lamps; Lighting fixtures for household use; Lights for external installation; Oil lamps; Electric light decorative strings; Table lamps; Wall lights; Hot water bottles in class 011. |
| 5,195,767 | SANTORUS | May 02, 2017 | For: Greeting cards; postcards; mini greeting cards; notelets; gift wrapping paper; art prints; art prints on canvas; book marks; posters; diaries; calendars; notebooks; notepads; fabric covered notebooks; address books; agendas; lever arch file folders; ring binders; paper folders; memo pads; sketchbooks; pencil tins; fabric pencil cases; pens; pencils; fountain pens; ballpoint pens; gel roller pens; photo albums; paper gift bags; cardboard storage boxes; cardboard gift boxes; stationery and document portfolio; zip around binders; printed |

| | | | |
|---|---|---|---|
| | | | materials, namely, novels and series of fiction books and short stories featuring a variety of topics; lunch bags in class 016. |
| 5,229,693 | SANTORUS | Jun. 20, 2017 | For: drawstring pouches; handbags; clutch bags; leather shopping bags; overnight bags; shoulder bags; evening handbags; cosmetic and personal grooming bags sold empty; vanity cases, sold empty; tote bags; travelling bags for carrying personal items and clothing; garment bags for travel; briefcases; suitcases; holdalls; backpacks; purses; pocket wallets; coin purses; wallets; organizer purses; vinyl cases for carrying identification cards; umbrellas; parasols in class 018. |
| 5,243,090 | SANTORUS | Jul. 11, 2017 | For: Beverageware and dinnerware of glass, porcelain, china and earthenware; kitchen and household containers and utensils, namely, serving utensils, not of precious metal or coated therewith; candle rings and candle sticks not of precious metal; china ornaments; figurines of porcelain, terracotta or glass; glass bowls and glass jars; jugs and pitchers; napkin holders and rings not of precious metal; pepper mills and pots; salt cellars and shakers; tableware, not of precious metal, namely, coffee sets, tea sets, plates, saucers, cups, bowls, glasses, mugs; tea pots; vases; dishes; works of art of porcelain, terracotta or glass; pottery, namely, sculptures of earthenware; cups and mugs not of precious metal; decanters; soap dishes; oven mittens |

| | | | in class 021. |
|---|---|---|---|
| | | | |

10. The U.S. registrations for the Gorjuss Trademarks are valid, subsisting, and in full force and effect. The registrations for the Gorjuss Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the Gorjuss Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the United States Registration Certificates for the Gorjuss Trademarks are attached hereto as **Exhibit 1**.

11. The Gorjuss Trademarks are exclusive to Plaintiff and are displayed extensively on Gorjuss Products and in marketing and promotional materials. The Gorjuss Trademarks are also distinctive when applied to Gorjuss Products, signifying to the purchaser that the products come from Plaintiff, or its licensees, and are manufactured to Plaintiff's quality standards. Whether Plaintiff manufactures the products itself or contracts with others to do so, Plaintiff has ensured that products bearing the Gorjuss Trademarks are manufactured to the highest quality standards.

12. The Gorjuss Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never abandoned. The success of the Gorjuss brand, in addition to the marketing of Gorjuss Products, has enabled the Gorjuss brand to achieve widespread recognition and fame and has made the Gorjuss Trademarks well-known. The widespread fame, outstanding reputation, and significant goodwill associated with the Gorjuss brand have made the Gorjuss Trademarks valuable assets of Plaintiff.

13. Products bearing the Gorjuss Trademarks have been the subject of substantial and continuous marketing and promotion. Plaintiff has marketed and promoted, and continues to market and promote, the Gorjuss Trademarks in the industry and to consumers through traditional

print media, authorized retailers, social media sites, point of sale material, and the website www.santoro-london.com/gorjuss.

14.     Plaintiff has expended substantial time, money, and other resources advertising, promoting, and marketing Gorjuss Products. Gorjuss Products have also been the subject of extensive unsolicited publicity due to the longstanding success of the Gorjuss brand. As a result, products bearing the Gorjuss Trademarks are widely recognized and exclusively associated by consumers as being high-quality products sourced from Plaintiff or its licensees. The Gorjuss Trademarks have achieved tremendous fame and recognition, adding to the inherent distinctiveness of the marks. As such, the goodwill associated with the Gorjuss Trademarks is of immeasurable value to Plaintiff.

15.     Gorjuss Products are sold only by Plaintiff or through authorized licensees and are recognized by the public as being exclusively associated with the Gorjuss brand.

16.     Defendants are unknown individuals and business entities who own and/or operate one or more of the e-commerce stores under the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in foreign jurisdictions and redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rules of Civil Procedure 17(b).

17.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their

counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

18.     The success of the Gorjuss brand has resulted in significant counterfeiting of the Gorjuss Trademarks. Because of this, Plaintiff has implemented an anti-counterfeiting program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, Plaintiff has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms such as Alibaba Group Holding Ltd. ("Alibaba"), AliExpress.com ("AliExpress"), Amazon.com, Inc. ("Amazon"), and Walmart, Inc. ("Walmart"), including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a report prepared for The Buy Safe America Coalition, most counterfeit products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online counterfeiters. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared by John Dunham & Associates (**Exhibit 2**).

19.     Because counterfeit products sold by offshore online counterfeiters do not enter normal retail distribution channels, the U.S. economy lost an estimated 300,000 or more full-time jobs in the wholesale and retail sectors alone in 2020. *Id*. When accounting for lost jobs from suppliers that would serve these retail and wholesale establishments, and the lost jobs that would have been induced by employees re-spending their wages in the economy, the total economic impact resulting from the sale of counterfeit products was estimated to cost the United States economy over 650,000 full-time jobs that would have paid over $33.6 billion in wages and

benefits. *Id.* Additionally, it is estimated that the importation of counterfeit goods costs the United States government nearly $7.2 billion in personal and business tax revenues in the same period. *Id.*

20.     Online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **<u>Exhibit 3</u>**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **<u>Exhibit 4</u>**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts. **<u>Exhibit 4</u>** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **<u>Exhibit 4</u>** at p. 39. Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **<u>Exhibit 3</u>** at 186-187. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the counterfeit seller] to reappear under a new false name and address in short order." *Id*. at p. 161.

21.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell Unauthorized Products to residents of Illinois.

22.     Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars in multiple ways, including via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish their stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use the Gorjuss Trademarks and none of the Defendants are authorized retailers of Gorjuss Products.

23.     Many Defendants also deceive unknowing consumers by using the Gorjuss Trademarks within the content, text, and/or meta tags of their e-commerce stores to attract consumers using search engines to find websites relevant to Gorjuss Products. Other e-commerce stores operating under the Seller Aliases omit using the Gorjuss Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Gorjuss Products.

24.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

25.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

26.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other common features, such as registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Unauthorized Products were manufactured by and come from a common source and that Defendants are interrelated.

27.     E-commerce store operators like Defendants communicate with each other through QQ.com chat rooms and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by brand owners. Websites like sellerdefense.cn also tip off e-commerce store operators, like Defendants, of new intellectual property infringement lawsuits filed by brand owners, such as Plaintiff, and recommend that e-commerce operators cease their infringing activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

28.     Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff.

29.     Defendants are working to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff have, knowingly and willfully used and continue to use the Gorjuss Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

30.     Defendants' unauthorized use of the Gorjuss Trademarks in connection with the advertising, distribution, offering for sale, and/or sale of Unauthorized Products into the United States, including Illinois, is likely to cause, and has caused, confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

31.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

32.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the Gorjuss Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The Gorjuss Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from products offered, sold, or marketed under the Gorjuss Trademarks.

33. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the Gorjuss Trademarks without Plaintiff's permission.

34. Plaintiff is the owner of the Gorjuss Trademarks. Plaintiff's United States registrations for the Gorjuss Trademarks are in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in the Gorjuss Trademarks and are willfully infringing and intentionally using infringing and counterfeit versions of the Gorjuss Trademarks. Defendants' willful, intentional, and unauthorized use of the Gorjuss Trademarks is likely to cause, and is causing, confusion, mistake, and deception as to the origin and quality of the Unauthorized Products among the general public.

35. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

36. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of the Gorjuss Trademarks.

37. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use of advertisement, promotion, offering to sell, and/or sale of Unauthorized Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

38. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

39. Defendants' promotion, marketing, offering for sale, and sale of Unauthorized Products has created and is creating a likelihood of confusion, mistake, and deception among the

general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Unauthorized Products by Plaintiff.

40.     By using the Gorjuss Trademarks in connection with the offering for sale and/or sale of Unauthorized Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Products.

41.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

42.     Plaintiff has no adequate remedy at law and will continue to suffer irreparable harm to its reputation and the associated goodwill of the Gorjuss brand if Defendants' actions are not enjoined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1)     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

      a.  using the Gorjuss Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a Gorjuss Product or is not authorized by Plaintiff to be sold in connection with the Gorjuss Trademarks;

      b.  passing off, inducing, or enabling others to sell or pass off any product as a Gorjuss Product or any other product produced by Plaintiff, that is not Plaintiff's or not

produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Gorjuss Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d. further infringing the Gorjuss Trademarks and damaging Plaintiff's goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear the Gorjuss Trademarks;

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms such Alibaba, AliExpress, Amazon, and Walmart shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Gorjuss Trademarks;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Gorjuss Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Gorjuss Trademarks;

5)     That Plaintiff be awarded its reasonable attorneys' fees and costs; and

6)     Award any and all other relief that this Court deems just and proper.


Dated this 17th day of April 2025.     Respectfully submitted,


    /s/ Martin F. Trainor
    Martin F. Trainor
    Sydney Fenton
    Alexander Whang
    TME Law, P.C.
    10 S. Riverside Plaza
    Suite 875
    Chicago, Illinois 60606
    708.475.1127
    martin@tme-law.com
    sydney@tme-law.com
    alexander@tme-law.com

    *Counsel for Plaintiff Lucio and Meera Santoro T/A Santoro Licensing*